IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE MABRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:25-cv-03165-SHL-jay |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff Jacqueline Mabry filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act (Docket Entry "D.E." 1, D.E. 15). Defendant has responded in opposition (D.E. 16) and Plaintiff has filed a Reply (D.E. 17). This matter is now ripe for adjudication. This matter has been referred to the undersigned for a report and recommendation (D.E. 10). For the reasons stated below, the Magistrate Judge recommends that Plaintiff's Motion be granted and this matter be reversed and remanded for further administrative proceedings.

ADMINISTRATIVE PROCEEDINGS

On February 16, 2024, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (Tr. 17). She also protectively filed a Title XVI application for supplemental security income on that same date. *Id.* In both applications, Plaintiff

alleged disability beginning March 1, 2023.[1] *Id.* Plaintiff's claims were denied on May 22, 2024, and she requested reconsideration, which was denied on August 3, 2024. (Tr. 124). Plaintiff timely filed a request for hearing, which was held on January 14, 2025. (Tr. 37-62). The ALJ issued an unfavorable decision on February 20, 2025. (Tr. 14-31).

Plaintiff timely filed an appeal to the Appeals Council, which denied Plaintiff's request for review. (Tr. 1-3). Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. Plaintiff timely filed the instant action (D.E. 1.)

## FACTUAL BACKGROUND

Plaintiff was born in 1971 and was 51 years old, which is defined as an individual closely approaching advanced age on the alleged disability onset date. (Tr. 30, 182). She completed the eleventh grade and did not get a GED. (Tr. 56-57). She did earn her commercial driver's license and forklift certification. (Tr. 51). Plaintiff alleges disability due to a heart ablation surgery and heart arrhythmia. (Tr. 252).

The ALJ found she had past work as a Garbage Truck Driver, DOT #905.663-010, which was performed at the medium level, and Limousine Driver, (DOT 359.673-010), which was performed at the light level. (Tr. 29). The ALJ further found that she was unable to perform any past relevant work. (Tr. 29).

Plaintiff (D.E. 15, 17) and Defendant (D.E. 16) both discuss the medical evidence they believe is relevant in their respective briefs. The ALJ discussed Plaintiff's medical records for the

[1] At Plaintiff's hearing, her attorney changed the alleged onset date to August 4, 2023 (Tr. 42). This change does not appear in the ALJ's decision.

relevant time period as well (Tr.17-31). The record in this case has been comprehensively reviewed.

Hearing Testimony

Plaintiff was represented by attorney Jonathan Kopin in the telephonic hearing on January 14, 2025 (Tr. 37). Plaintiff and a Vocational Expert (V.E.) both testified. *Id.* The transcript of the testimony from the hearing has been carefully reviewed.

APPLICABLE LAW AND THE ALJ'S FINDINGS

Applicable Law

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g). The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision, *id*. and whether the correct legal standards were applied. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *Walters v. Comm'r of Soc.*

*Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if the substantial evidence also supports the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 53 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

The ALJ's Findings

The ALJ's decision contains in part the following pertinent findings and conclusions:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2. Claimant has not engaged in substantial gainful activity since March 1, 2023, the alleged onset date.

3. Claimant has the following severe impairments: cardiac dysrhythmia, seizure disorder, heart failure, spine disorder, hypertension, obesity, and disorders of the bilateral shoulders (20 CFR 404.1520(c) and 416.920(c)).

4. Claimant does not have an impairment or combination of impairments that has met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, crawl; she can occasionally reach overhead; she can tolerate frequent exposure to extreme temperatures and can tolerate occasional exposure to workplace hazards such as dangerous moving machinery and unprotected heights.

6. Claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Claimant was born on July 21, 1971, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. Claimant has at least a high school education (20 CFR 404.1564 and 416.964).[2]

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. Claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2023, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## ANALYSIS

### Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs*., 17 F.3d 171, 174 (6th Cir. 1994) (*Citing* 42 U.S.C. § 405(g)).

Plaintiff here is requesting a sentence-four remand. Pursuant to 42 U.S.C. § 405(g), the court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

[2] According to SSA Guidelines, Claimant's education should have been classified as "limited" rather than "high school." However, because the vocational expert's analysis considered unskilled work, this appears to be harmless error.

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (*quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a

perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (*citing McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

The court may immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id*. at 176 (citations omitted)." "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id*. In the alternative, where there is insufficient support for the ALJ's findings, the appropriate remedy is to reverse and remand for further consideration. *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (*citing Faucher*, 17 F.3d at 174).

## Argument

Plaintiff argues that this matter should be reversed and remanded. She argues that the ALJ's Residual Functional Capacity ("RFC") finding is deficient and not supported by substantial evidence. Specifically, Plaintiff asserts that neither the ALJ's hypothetical, nor the RFC, included limitations for unscheduled breaks, rest periods, or absences due to fatigue to account for her severe cardiac dysrhythmias, which is reversible error. Pl. Br. at 8-9.

The Commissioner rebuts that Plaintiff's argument amounts to an improper request for the Court to re-weigh the evidence in her favor, which the court cannot do. *See Tammie F. v. Bisignano*, No. 25-cv-02136, 2025 WL 2860050, at *10 (W.D. Tenn. Oct. 9, 2025) (explaining that "[i]t is not the court's role to reweigh the evidence and interfere when 'there is a zone of choice within which the decisionmakers can go either way.'").

Plaintiff also argues that while the ALJ considered listing 4.02, he did not indicate whether she met or medically equaled listing 4.02A due her reduced LVEF findings. Pl. Br. at 12, citing Tr. 21. The Commissioner responds that Plaintiff's argument should be rejected because "the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec. Admin*., 544 F. App'x 639, 641 (6th Cir. 2013). Moreover, the Commissioner says, the evidence "does not raise a substantial question that Plaintiff satisfies all of the criteria of the listing" (D.E. 16 at 10), and that Plaintiff has not satisfied her burden to show that her impairments met or medically equaled a listing. *Id.* at 10.

In Plaintiff's Reply, Plaintiff cites Social Security Ruling 96-8p, which requires the RFC assessment to describe the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. Plaintiff states that her primary allegation is that her cardiac symptoms cause fatigue, shortness of breath, and episodes requiring prolonged rest, but that the ALJ erred because he did not meaningfully explain why Plaintiff's testimony and the objective cardiac evidence did not support any limitation for reduced standing/walking, unscheduled breaks, off-task time, or absenteeism. And while the RFC accounted for restrictions relating to Plaintiff's non-cardiac impairments, there was no discussion by the ALJ of restrictions pertaining to Plaintiff's severe cardiac symptoms.

<u>Analysis</u>

The RFC is what a claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is an assessment based upon all of the relevant evidence including a claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see*

*also* SSR 96-8P, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *3 (S.S.A. July 2, 1996) ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). The responsibility for determining the RFC lies with the ALJ. *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006) (explaining that "[t]he ALJ is ultimately responsible for determining a claimant's RFC based on relevant medical and other evidence in the record." (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c))). As part of the RFC analysis, the ALJ considers opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). A medical opinion is a statement from a medical source about what an individual can still do despite his or her impairments. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). Pursuant to 20 C.F.R. § 404.1520c, the ALJ must articulate the persuasiveness of all the medical opinions and prior administrative medical findings in the case record, applying the "most important factors" of supportability and consistency for claims filed after March 27, 2017. *See Oliver v. Kijakazi*, 2023 WL 2587487 (E.D. Tenn. Mar. 21, 2023) (citing § 404.1520c(b)(2)) ("Although there are five factors, the most important are supportability and consistency, and an ALJ must explain how these two factors were considered for each source").

While "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the [articulation] requirement," *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-cv-00551, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.), "[d]istrict courts applying the [ ] regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, by requiring the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-00588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain [their] consideration of the opinion and identify the

evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how [they] considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-cv-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). In other words, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

Here, Plaintiff argues that her documented cardiac-related fatigue, syncope, and need for rest could change the disability determination because the omitted limitations were vocationally material. Substantial objective and subjective evidence in the record show car wrecks and other injuries from blacking out due to her heart issues, repeated abnormal rhythm findings, documented hospitalizations and surgeries, and testimony that activity causes racing heart, shortness of breath, and the need to rest for extended periods. In other words, there is substantial evidence in support of Plaintiff's assertion that her cardiac-related symptoms required accommodation, such as limited walking and rest breaks, that the RFC does not account for.

While the Commissioner purports that the decision was in his zone of choice and that there is substantial evidence in support of the opposite conclusion, closer scrutiny reveals that this is simply not the case. First, as far as subjective complaints, it is true that Plaintiff did not complain about her symptoms at some of her many doctor visits. However, there is evidence in the record that Plaintiff tended to underreport her symptoms. For example, in August 2023 a hospitalist notes that, "Family at bedside states that patient downplays her seizure problems . . ." (Tr. 1128) and a November 2024 examination found bradycardia despite Plaintiff's lack of complaints (Tr. 27). Notably, Plaintiff did disclose on her Disability Report that she could only walk one half block and

that she became short of breath climbing stairs. (Tr. 22-23). Plaintiff reiterated her shortness of breath and other cardiac-related symptoms in her sworn testimony. (Tr. 46-47).

Secondly, the ALJ's characterization of Plaintiff's daily activities is inconsistent and does not provide support for the RFC finding of light work. As defined in 20 CFR 404.1567(b) and 416.967(b):

> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

The record in this case indicates that Plaintiff's shortness of breath was not triggered by sedentary activities that she admitted no problem with, such as paying bills, watching television, and talking on the phone. The Magistrate Judge does not find that these sedentary activities are substantial evidence in support of the ALJ's RFC finding for light work. Moving on to the other activities that the ALJ relies on, the ALJ claims that Plaintiff's activities such as driving, grocery shopping, attending church, and doing household chores supported an ability to do light work. However, Plaintiff testified that she does not drive because of her heart racing and related black out leading to a car wreck. (Tr. 52). The record contains objective evidence supporting Plaintiff's testimony that she is unable to drive because of her cardiac symptoms. In May 2022, Plaintiff went to the emergency room due to falling off a garbage truck while working, which was related to her heart issues. The next month, Plaintiff struck a fence while driving and ended up in the emergency room, and just nine days later fell out of a truck (Tr. 23-24). In August 2023, emergency room records show that Plaintiff presented with syncope. She had accidentally struck a car in front of her and was staring and unresponsive after the accident. Plaintiff was found to be in atrial fibrillation with

RVR. (Tr. 24-25). On September 15, 2023, Plaintiff went to the ER with complaints of syncope and irregular heartbeat and was admitted. She reported she had spent the day outside working and cleaning, and when she got in her car to pick up her grandchildren, she became lightheaded and was involved in a low-speed motor vehicle accident. On the scene of the accident, she had been found to be in atrial fibrillation with rapid ventricular response. (Tr. 25). An EKG at Stern Cardiovascular in September 2023 showed recurrent atrial fibrillation, symptoms of which include shortness of breath and dizziness (Tr. 25). In a November 2023 ER visit she denied chest pain and syncope but she was found to be in atrial fibrillation with RVR. Among other findings, Plaintiff's estimated LVEF was 40 to 45%. Mild global hypokinesis was present. The left atrium was severely enlarged, and the right atrium was mildly enlarged. Mild to moderate mitral valve regurgitation was noted, along with mild tricuspid regurgitation. Plaintiff is shown to have undergone catheter ablation atrial fibrillation with pulmonary vein isolation, right atrial flutter ablation, and left atrial flutter ablation (Tr. 25). A November 2024 examination found bradycardia despite Plaintiff's lack of complaints (Tr. 27). The medical records in this case even include where Plaintiff was told she could not drive for at least six months and must be examined by a neurologist before resuming driving. (Tr. 1174). Thus, it is clear from both the subjective and objective evidence in the record that Plaintiff's testimony that she does not drive due to her cardiac symptoms is both well supported and contrary to the ALJ's RFC finding that Plaintiff's driving supported her ability to do a range of light work.

Just as the record does not support the ALJ's finding that Plaintiff's daily activities included driving, his characterization of Plaintiff reporting that she could do grocery shopping and household chores as evidence supporting an ability to do light work is inconsistent with the record. (Tr. 23). Plaintiff reported her heart racing while doing chores. (Tr. 47). Plaintiff testified that after

about an hour of activity she had to rest for an hour and a half to two hours to get her heart to calm down so she could continue. *Id.* As for grocery shopping, Plaintiff gets too short-winded at the grocery store and cannot use a push cart. She has to "ride the little cart" to shop. (Tr. 53). Plaintiff's brother picks her up for church and for the grocery, she does not drive. (Tr. 55). Objective evidence in the record supports this testimony that simple chores cause cardiac-related symptoms requiring rest and breaks. For example, as described previously, Plaintiff's working and cleaning outside led to feelings of lightheadedness, and she experienced atrial fibrillation with rapid ventricular response, causing a car wreck. In sum, Plaintiff's activities are inconsistent with and do not support the ALJ's RFC finding.

The ALJ also relied on medical opinions in support of his RFC finding. Importantly, the ALJ acknowledged that the opinion of Dr. Lochemes followed his treatment of Plaintiff related to her shoulder and cervical complaints only, so the opinion is not related to the Plaintiff's cardiac issues and therefore is not supportive evidence of the RFC finding as it pertains to same. (Tr. 26).[3]

The ALJ also relies on a "Medical Source Statement: Physical" by Quaneshia Farris, ANP, completed in November 2024. A review of this medical source statement, which is primarily checked boxes, shows that the form is both incomplete and contains a number of inconsistencies with the record. For example, Farris leaves two major sections of the form blank, the sections

[3] The Magistrate Judge notes that there are inconsistencies or unsupported conclusions drawn within the ALJ's analysis of this medical opinion. The ALJ found Dr. Lochemes' opinion persuasive in his determination that Plaintiff retains the ability to perform a range of work within the light exertional level which includes no more than occasional overhead reaching. (Tr. 26). Dr. Lochemes notes on more than one visit that Plaintiff's physical therapy, which he had prescribed believing it would be beneficial, had not been approved, opined that Plaintiff was not able to pick up luggage as had been required by her most recent job, and ultimately released her with restrictions of no lifting over thirty pounds and no overhead work. The ALJ discounts the opinion because the doctor "did not specifically state the limitations he opined present were permanent in nature." (Tr. 26). The ALJ also concludes based solely on the timing of Plaintiff's visits that "the limitations presented by Dr. Lochemes in January 2024 likely related to her July 2023 injury and therefore indicat[es] the opined limitations had not been present for any consecutive twelve month period." (Tr. 26). This conclusion was made despite his acknowledgment that Plaintiff had a "history of multiple shoulder injuries dating back to at least 2019." *Id.*

opining the number of minutes that the patient can sit, stand, and walk at one time as well as not completing the section indicating the total number of hours the patient can sit, stand, and walk in an 8-hour workday. (Tr. 4419). The form asks if the patient's symptoms would interfere with attention and concentration required to complete simple tasks and Farris checks the "never" box. (Tr. 4419). Farris goes down the line checking "frequently" for every box on how much weight Plaintiff can lift and carry, all the way to the maximum listed of 50 pounds. She does the same with postural actions, checking "frequently" for balancing, stooping, kneeling, and crouching. Farris lists 100% for all the entries for hands, fingers, and arm usage, and checks that Plaintiff would "never" be absent from work due to impairment or treatments. Farris does opine that Plaintiff is not a malingerer. *Id*.

Courts have repeatedly "cast doubt on the usefulness of these forms" particularly because they do not "cite clinical test results, observations, or other objective findings." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (citing cases). Where no explanation is provided by the physician, ALJs and courts are understandably reluctant to find any value in these conclusory opinions. *See id.; see also Rogers v. Comm'r of Soc. Sec.,* No. 99–5650, 2000 WL 799332 (6th Cir. June 9, 2000) (treating physician's documentation of impairments on form with checked-off boxes was not entitled to great weight when no further explanation given). In this particular case, the form is not even complete. The incomplete check box form with no explanation or support provided by Farris, coupled with the stark contrast of Farris finding absolutely no restrictions at all given Plaintiff's documented shoulder issues (which were acknowledged by state agency medical consultants Chung and Schaffzin as well as Dr. Lochemes, and accounted for in the ALJ's RFC finding) cast doubt on the veracity of this statement form as a whole. Like her shoulder issues, Plaintiff had documented cardiac-related symptoms supported by objective

evidence, and it is fair to say that any opinion would either contain some limitation on a completed form or an explanation and observations as to why "no limitations" was assessed. Because this form was incomplete, cursory in nature, and conflicted with other opinions in the record, it cannot be characterized as substantial evidence in support of the ALJ's RFC finding. And while the ALJ notes that Plaintiff reported to Farris that "her atrial fibrillation had been stable and well controlled since her January 2024 ablation and loop recorder placement," the objective evidence shows that between Jan. 25, 2024, and July 11, 2024, she had 353 episodes of atrial fibrillation lasting greater than six minutes, each. (Tr. 27, Tr. 4438).

Finally, the ALJ relies on two state agency doctors in support of his RFC determination. The ALJ noted in his decision that Dr. Ok Yung Chung and Dr. Lawrence Schaffzin were in accord with their findings, which were as follows:

> [M]edical consultant Dr. Ok Yung Chung completed an assessment on which he found the claimant could lift twenty pounds occasionally and ten pounds frequently. Standing and/or walking and sitting were limited to about six hours during an eight-hour workday. Climbing (ladders, ropes, or scaffolds was prohibited, while climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling were limited to occasional. Overhead reaching with the right upper extremity was limited to occasional. Even moderate exposure to hazards and concentrated exposure to extreme cold and extreme hot were to be avoided

(Tr. 28). The ALJ states that these opinions "are supported by their review and analysis of the claimant's treatment history, including their review of the various imaging and testing results within the record and review of the claimant's hospitalizations and procedures related to her cardiovascular issues." However, as has been previously discussed, the treatment history, testing, and hospitalization records show objective history of even activity such as walking causing racing heart, shortness of breath, and the need to rest for extended periods. The ALJ continues, "They [] likewise supported the claimant's reports of having no atrial fibrillation issues after her January

2024 ablation, the absence of consistent findings of reduced muscle strength, the minimal symptoms reported by the claimant at her treatment visits, and her frequent work activity." But as Plaintiff points out, the loop recorder shows that between Jan. 25, 2024, and July 11, 2024, Plaintiff had 353 episodes of atrial fibrillation lasting greater than six minutes, each. (Tr. 27, Tr. 4438), and, moreover, the statement that Plaintiff had "frequent work activity," is unfounded, as in reality, the ALJ acknowledged, after vocational expert testimony, that Plaintiff could not perform her past relevant work (Tr. 29-30) and Plaintiff testified that when she tried to work at a warehouse—after her heart ablation procedure—her heart would start racing and she would feel as though she was going to faint, thus she left that job after less than two weeks. (Tr. 46). Because of these inconsistencies and conflicts, the Magistrate Judge cannot find that these state agency medical opinions are evidence in support of the ALJ's RFC finding. And relatedly, the ALJ's characterization of the record in his analysis (Tr. 29) is not consistent with the evidence in the record.

In sum, the ALJ's RFC finding that Plaintiff can sustain light work on a regular and continuing basis in unsupported, and counter to objective cardiac evidence to the contrary. The ALJ failed to build a logical bridge between the cardiac evidence in this case and the ability to sustain full-time work by either including endurance-related limitations or explaining why none were necessary. That omission violates SSR 96-8p and prevents meaningful judicial review, and thus remand is appropriate. On remand, the ALJ should build a logical bridge between the record and his or her findings, explaining why they did or did not accept a limitation, including the endurance-related limitations discussed in this report and recommendation. *Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 844 (N.D. Ohio 2022) (citing *Ripley v. Commissioner of Soc. Sec.*,

415 F. Supp. 3d 752, 767 (N.D. Ohio 2019)).” *Hamric v. Comm'r of Soc. Sec.*, No. 1:22-CV-01034-CEH, 2023 WL 4847693, at *6 (N.D. Ohio July 27, 2023).

## CONCLUSION

For the reasons set forth herein, the Magistrate Judge recommends that the decision of the Commissioner be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g). On remand, the ALJ should conduct a de novo review of the record with respect to the issues addressed in this Order, gather additional evidence that may be needed, including ordering a consultative examination from the Stern Cardiovascular Clinic who treated Plaintiff, and conduct another hearing on the matter.

Respectfully submitted this 10th day of August, 2026.

s/Jon A. York
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**